Electronically Filed
Intermediate Court of Appeals
28917
21-SEP-2012
09:54 AM

NO. 28917

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

CIVIL NO. 03-1-1922

NST HOLDINGS CORP, dba BUDGET HAWAIIAN HOLIDAYS, GENE MIYAKE
and DANNY CHING, Plaintiffs-Appellants/Cross-Appellees,
v.
ALTRES, INC., Defendant-Appellee/Cross-Appellant,
and
NAUTILUS INSURANCE COMPANY, Defendant-Appellee/Cross-Appellee,
and
GARY DIFALCO, JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS
1-10, DOE PARTNERSHIPS 1-10; DOE GOVERNMENTAL ENTITIES 1-10,
and DOE NON-PROFIT ENTITIES 1-10, Defendants

AND

CIVIL NO. 04-1-0776

NST HOLDINGS CORP, dba BUDGET HAWAIIAN HOLIDAYS, DANNY CHING
and GENE MIYAKE, Plaintiffs-Appellants/Cross-Appellees,
v.
ALTRES, INC., Defendant-Appellee/Cross-Appellant,
and
ISLAND INSURANCE COMPANY, Defendant-Appellee/Cross-Appellee,
and
GARY DIFALCO, JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS
1-10, DOE PARTNERSHIPS 1-10; DOE GOVERNMENTAL ENTITIES 1-10,
and DOE NON-PROFIT ENTITIES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Reifurth, JJ.)

NST Holdings Corp. doing business as Budget Hawaiian
Holidays ("NST"), Gene Miyake ("Miyake"), and Danny Ching
("Ching") (collectively, "NST Parties") appeal from (1) the
Second Amended Final Judgment, filed November 23, 2007, and (2)
the Order Granting in Part and Denying in Part [Ching's] Motion

for Award of Attorney's Fees and Costs, filed November 23, 2007 ("Order Denying Ching's Motion for Fees/Costs"), entered in the Circuit Court of the First Circuit ("Circuit Court").[1/] Altres, Inc. cross-appeals from the Circuit Court's (1) Order Denying [Altres, Inc.'s] Motion to Join Real Party in Interest, filed April 3, 2007 ("Order Denying Motion to Join Real Party"), (2) Order Denying [Altres, Inc.'s] Motion for Prejudgment Interest, Filed June 8, 2007, filed July 12, 2007 ("Order Denying Motion for Prejudgment Interest"), (3) Order Denying Ching's Motion for Fees/Costs, (4) Amended Findings of Fact and Conclusions of Law, filed November 23, 2007 ("Amended FOF/COL"), and (5) Second Amended Final Judgment.

This appeal originated with two lawsuits seeking declaratory relief filed by the NST Parties in Hawai'i against insurers Nautilus Insurance Company ("Nautilus") and Island Insurance Company ("Island"), Gary DiFalco ("DiFalco"), Altres, Inc., and Doe defendants to determine the insurers' obligations to defend or indemnify the NST Parties in an employment-related action brought by DiFalco in California Superior Court stemming from the closure of NST's Manhattan Beach, California office at which DiFalco worked. Altres, Inc. filed counterclaims against the NST Parties and cross-claims against the insurers. The cases were consolidated for trial in the Circuit Court. The insurers settled with the NST Parties and the Circuit Court issued a judgment that addressed the claims of the remaining parties.

I.  Background

    A.  Agreements

In a service agreement dated February 5, 1992 ("1992 Agreement"), NST, a travel-services company doing business in California as Budget Holidays, Inc. ("Budget"), hired Employee Management Corporation ("EMC") to provide it with personnel staffing and/or payroll services for one year, beginning January 15, 1992. Under the terms of the 1992 Agreement, EMC would hire personnel as its own employees and then assign them to

---

[1/]    The Honorable Randal K.O. Lee presided.

work for Budget. EMC agreed to "be responsible for the administration of all employment matters, payment of periodic payrolls, including the withholding of applicable State, Federal and other payroll-related taxes[.]"

Pursuant to the 1992 Agreement, Budget instructed EMC to hire DiFalco. EMC subsequently hired DiFalco as an employee and leased him to Budget to be Budget's Regional Manager.

Subsequent to the 1992 Agreement, Altres, Inc. replaced EMC as Budget's employment-services provider. On or about March 15, 1996, Budget and Altres, Inc. entered into a one-year agreement, beginning March 1, 1996, concerning the provision and management of Budget's workforce ("Workforce Agreement").[2/] The Workforce Agreement states in pertinent part:

> 1. This Proposal is for the provision of a workforce to BUDGET HOLIDAYS ("Customer") . . . . Under this Agreement, [Altres, Inc.] is responsible for the employment of the workforce, and CUSTOMER is the business responsible for the workplace.
>
> 2. a. This Agreement covers the workforce employed by [Altres, Inc.]. [Altres, Inc.] shall implement its human resources, risk management, and communications policies, and shall otherwise manage said employment relationship within CUSTOMER's workplace. [Altres, Inc.] shall have the right to hire, discipline, communicate with its employees at any time, determine whether to retain, compensate, terminate, and otherwise direct and control, the employment of the workers covered by this Agreement. CUSTOMER shall have the right to reject the services of any [Altres, Inc.] employee, but CUSTOMER may neither hire nor fire the employees covered by this Agreement. . . .
>
> b. CUSTOMER shall be responsible for the workplace and the activity in it . . . . CUSTOMER's workplace must continue to comply with all regulatory aspects of doing business which applied to CUSTOMER before execution of this Agreement, including without limitation, the obligations to maintain a safe and accessible workplace under the Occupational Safety & Health Act, and the Americans with Disabilities Act, and all related and similar regulatory requirements. . . .
>
> . . . .
>
> 4. a. Each party to this Agreement is responsible for its own actions or lack thereof. Any action or lack of action of any [Altres, Inc.] employee shall be attributed to that party which at the time of the action or lack of action was directing the activities of the worker.

---

[2/] Although the Workforce Agreement states that it runs for one year and has no evident provision for roll-over, there was no subsequent agreement presented by the parties and the Circuit Court found that the Workforce Agreement was in effect "at the time the controversy in this matter arose." The finding is unchallenged.

. . . .

> c.      CUSTOMER is responsible for the workplace and the activity in it, just as it is solely responsible for the conduct of its business . . . . [Altres, Inc.] has no responsibility whatsoever for said business, product, or service, and CUSTOMER indemnifies and holds [Altres, Inc.] harmless for any and all liabilities or consequences arising out of CUSTOMER's business, product, or service.  Further, but without limitation of the foregoing, CUSTOMER agrees to hold [Altres, Inc.] harmless and indemnify it against all claims for any negligent act, other tortuous conduct, violation of any statute, law, or regulation, criminal or dishonest activity attributed to any assigned employee maintained hereunder or CUSTOMER's failure to perform under the terms of this agreement, or due to any action by CUSTOMER which may result in a violation of any law or regulation for which it has any responsibility pursuant to law or any provision of this Agreement.

Consistent with the agreement, DiFalco became an employee of Altres, Inc. while continuing to perform his job at Budget.

Some time later, Altres Employer Services, Inc. ("AES"), a business entity distinct from but related to Altres, Inc., was incorporated in Utah.  Over time, control of Altres, Inc.'s employees working in California was transferred to AES. At some point, although the record is unclear as to when, DiFalco became employed by AES.

B.     The California DiFalco Case

On April 23, 2004, DiFalco filed a second amended complaint[3], in the California Superior Court, against AES; Altres, Inc.; Barron Guss ("Guss") (Altres, Inc.'s president); NST, doing business as Budget; Miyake (NST's vice president); and Ching (NST's president).  DiFalco asserted eighteen claims for relief, most of which related to discriminatory statements allegedly made by Miyake and other actions relating to the workplace and DiFalco's position.  Two of DiFalco's claims asserted wrongdoing on the part of Altres, Inc.

The NST Parties subsequently settled with DiFalco ("NST/DiFalco Settlement").  Under the NST/DiFalco Settlement, in exchange for the release of DiFalco's claims, the NST Parties paid a cash settlement and assigned to DiFalco "any and all tort and common law claims they may have against the Altres entities

---

[3]     DiFalco's initial complaint was filed in California Superior Court on May 15, 2003.

arising from the claims asserted in the lawsuit," subject only to a few exceptions ("Assigned Claims").

Altres, Inc., AES, and Guss, in turn, settled DiFalco's claims for $195,000.00 ("Altres, Inc./DiFalco Settlement"). Of the $195,000.00 total settlement, $19,500.00 was explicitly allocated for DiFalco's 2001 compensation; $73,000.00 was allocated for DiFalco's personal injury damages; $19,500.00 was allocated for the Assigned Claims; and (4) $85,000.00 was allocated for DiFalco's attorneys' fees.

C.    The Hawai'i declaratory judgment suits

On October 14, 2003, the NST Parties filed a second amended complaint in Circuit Court against Nautilus, DiFalco, Altres, Inc., and various Doe defendants ("Nautilus Case"). The NST Parties alleged, among other things, that Nautilus was contractually obligated to defend and/or indemnify them for claims asserted in the DiFalco Case. On April 27, 2004, the NST Parties filed a separate complaint in Circuit Court against Island, DiFalco, Altres, Inc., and various Doe defendants, similarly seeking, among other things, a judgment declaring that Island was contractually obligated to defend and/or indemnify the NST Parties for claims asserted in the DiFalco Case ("Island Case").

On July 14, 2005, the Circuit Court granted Nautilus's and Island's respective motions for summary judgment as to the NST Parties' claims against them. Those orders are not challenged on appeal.

The NST Parties did not assert any claims against Altres, Inc. in either the Nautilus Case or the Island Case. Altres, Inc., however, asserted counterclaims against the NST Parties for breach of contract, indemnification, negligence, wrongful exposure to lawsuit and fees, and entitlement to insurance proceeds. Consequently, the Nautilus Case and the Island Case were consolidated for trial.

At the bench trial, there was an issue as to whether DiFalco was actually employed by Altres, Inc. during the time period when DiFalco's claims arose. Guss testified that while

5

DiFalco had been employed by AES during the relevant period and that DiFalco was "not a W-2 employee of ALTRES, Inc.," DiFalco "was co-employed by ALTRES[, Inc.] for the purposes of administrative employment at the time he filed his you know -- I won't say at the time he filed his claim, but during that relevant period, he was employed by [AES]." Guss further testified that there was a "very good possibility" that DiFalco was employed by Altres, Inc. at some time relevant to the California DiFalco Case.

Although the Circuit Court, when ruling on a motion for judgment as a matter of law, stated that DiFalco "was an employee of [AES] which is a separate corporation from ALTRES, Inc.," the Circuit Court held that indemnification provisions in the Workforce Agreement were broad enough to encompass "the type of conduct that we have in this particular case."

The Circuit Court entered its Findings of Fact and Conclusions of Law on May 23, 2007, and the Amended FOF/COL on November 23, 2007. The Circuit Court did not make a finding stating whether DiFalco had or had not been an employee or co-employee of Altres, Inc. during the relevant time period.

On September 12, 2007, the NST Parties filed a petition for approval of good faith settlement ("Settlement Petition") pursuant to Hawaii Revised Statutes ("HRS") § 663-15.5, noting that they had settled with Nautilus and Island. On September 13, 2007, the Circuit Court entered the Final Judgment, adjudging, among other things, that NST and Miyake were liable to pay $110,000.00 to Altres, Inc., as a portion of the Altres, Inc./DiFalco Settlement, and that the NST Parties were jointly and severally liable for Altres, Inc.'s attorneys' fees stemming from the Nautilus Case and the Island Case.

On October 15, 2007, the Circuit Court announced that it found that the settlements between the NST Parties and Nautilus and Island had been entered into in good faith, and that it would therefore grant the NST Parties' Settlement Petition. An order granting the Settlement Petition was filed on November 5, 2007.

On October 16, 2007, the NST Parties filed a post-judgment motion to amend and/or correct the Final Judgment and an

6

order regarding Altres, Inc.'s request for attorneys' fees and costs with language that would reflect (1) that Altres, Inc.'s cross-claims against Nautilus and Island were moot as a result of a settlement between various parties and (2) that only NST and Miyake, and not Ching, were liable for Altres, Inc.'s attorneys' fees and costs in the amount of $35,437.53. On October 23, 2007, Ching filed a motion to recover attorneys' fees and costs from Altres, Inc. on the ground that he was the prevailing party in the litigation.

On October 26, 2007, the Circuit Court filed the Amended Final Judgment, which stated that, "[p]ursuant to the Court's granting on October 22, 2007 of [NST Parties' Motion to Amend and/or Correct], judgment is further entered in favor of ALTRES, Inc. and against [NST and Miyake], jointly and severally, for attorneys' fees and costs in the amount of $35,437.53[,]" omitting reference to Ching. The Amended Final Judgment added a provision stating that "[p]ursuant to the Court's granting on October 22, 2007 of [NST Parties' Settlement Petition], filed herein on September 12, 2007, ALTRES, Inc.'s Cross-claims against [Nautilus and Island] have been statutorily resolved and the settling parties are discharged from all liability for any contribution from any other joint tortfeasor or co-obligor." The Amended Judgment further stated that "[a]ll claims and parties not addressed herein are dismissed." The Circuit Court entered the written order granting the Motion to Amend and/or Correct on November 1, 2007.

On November 23, 2007, the Circuit Court entered the Order Denying Ching's Motion for Fees/Costs. On the same day, the Circuit Court also entered a Second Amended Final Judgment, which differed from the Amended Judgment primarily in that it (1) explicitly entered judgment in favor of Ching on Counts I and II of the Counterclaim, (2) explicitly entered judgment in favor of Miyake and Ching, in addition to NST, on Count IV of the Counterclaim, and (3) noted the denial of Ching's October 23, 2007 motion for attorneys' fees and costs.

On December 21, 2007, the NST Parties filed a joint notice of appeal from the (1) Second Amended Final Judgment and (2) Order Denying Ching's Motion for Fees/Costs. On January 3,

7

2008, Altres, Inc. filed a notice of cross-appeal from, among other things, the Second Amended Final Judgment.[4]

II.  Points of Error

On appeal,[5] the NST Parties contend that the Circuit Court erred in (1) concluding that NST breached the Workforce Agreement when it refused to indemnify Altres, Inc. for its payments to settle with DiFalco because (a) DiFalco's claims arose while he was employed by AES and not Altres, Inc.; (b) the Circuit Court did not find that NST was liable to DiFalco; (c) some of the claims against Altres, Inc. were for Altres, Inc.'s own actions; (d) NST is being forced to indemnify third parties; and (e) the NST/DiFalco Settlement resolved all of DiFalco's claims arising from NST's conduct.  The NST Parties further contend that the Circuit Court erred in (2) finding and concluding that Altres, Inc. expended its own money in its defense of the DiFalco Case, and (3) concluding that Altres, Inc. paid the attorneys' fees and costs in this case.

On cross-appeal, Altres, Inc. contends that (1) the Circuit Court erred in considering a failure-to-mitigate-damages defense that was raised by the Circuit Court itself for the first time at the close of trial.  Altres, Inc. further contends that the Circuit Court erred (2) in refusing to require that NST indemnify Altres, Inc. for that portion of the Altres, Inc./DiFalco Settlement apportioned for the payment of DiFalco's attorneys' fees; (3) in not ordering NST to indemnify Altres, Inc. for its attorneys' fees and costs incurred in litigating the DiFalco Case because the Circuit Court (a) incorrectly interpreted the Workforce Agreement, (b) erred by denying Altres, Inc. its attorneys' fees on mitigation-of-damages grounds, (c) incorrectly identified the amount of attorneys' fees and costs in controversy, and (d) failed to consider certain attorney

---

[4]    Although the cases were only consolidated for trial, and only one appellate docket number was assigned to both the Nautilus Case and the Island Case, both cases are properly before this court.  *See Ainoa v. Unemployment Compensation Appeals Div.*, 62 Haw. 286, 287 n.1, 614 P.2d 380, 382 (1980).

[5]    Altres, Inc. contends that the notice of appeal as to NST and Miyake is untimely.

invoices; and in denying its (4) Motion to Join Real Party in Interest and (5) Motion for Prejudgment Interest.

Finally, (1) Altres, Inc. argues that the Circuit Court erroneously concluded that Ching was a prevailing party, and (2) Ching argues that the Circuit Court erroneously denied him recovery of any attorneys' fees and costs.

III. Discussion

A.    The NST Parties' appeal was timely.

HRS § 641-1(a) authorizes appeals from "final judgments, orders, or decrees[.]"  Haw. Rev. Stat. § 641-1(a) (1993 & Supp. 2011).  Appeals under HRS § 641-1 "shall be taken in the manner and within the time provided by the rules of the court."  HRS § 641-1(c) (1993 & Supp. 2011).  Rule 58 of the Hawai'i Rules of Civil Procedure ("HRCP") requires that "[e]very judgment shall be set forth on a separate document."  Haw. R. Civ. P. 58.  Based on this requirement under HRCP Rule 58, the Supreme Court of Hawai'i has held that "[a]n appeal may be taken from circuit court orders resolving claims against parties only after the orders have been reduced to a judgment and the judgment has been entered in favor of and against the appropriate parties pursuant to HRCP [Rule] 58[.]" *Jenkins v. Cades Schutte Fleming & Wright*, 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994).

> [I]f a judgment purports to be the final judgment in a case involving multiple claims or multiple parties, the judgment (a) must specifically identify the party or parties for and against whom the judgment is entered, and (b) must (i) identify the claims for which it is entered, and (ii) dismiss any claims not specifically identified[.]

*Id.*

The Circuit Court entered three judgments that resolved all claims against all parties by entering judgment on some of the claims and dismissing all other claims:

(1)   the September 13, 2007 judgment;

(2)   the October 26, 2007 first amended judgment; and

(3)   the November 23, 2007 second amended judgment.

All three of these judgments satisfy the requirements for an appealable final judgment under HRS § 641-1(a), HRCP Rule 58, and the holding in *Jenkins*.

9

When the Circuit Court amended the September 13, 2007 judgment, an issue arose as to which of the multiple judgments triggered the time period under Hawai'i Rules of Appellate Procedure ("HRAP") Rule 4 for filing a notice of appeal:

> The general rule is that where a judgment is amended in a material and substantial respect, the time within which an appeal from such determination may be taken begins to run from the date of the amendment, although where the amendment relates only to the correction of a clerical error, it does not affect the time allowed for appeal.

*Poe v. Hawai'i Labor Relations Bd.*, 98 Hawai'i 416, 418, 49 P.3d 382, 384 (2002) (citation, internal quotation marks, and ellipsis omitted).

> If the amendment of a final judgment or decree for the purpose of correcting a clerical error either materially alters rights or obligations determined by the prior judgment or decree or creates a right of appeal where one did not exist before, the time for appeal should be measured from the entry of the amended judgment. If, however, the amendment has neither of these results, but instead makes changes in the prior judgment which have no adverse effect upon those rights or obligations or the parties' right to appeal, the entry of the amended judgment will not postpone the time within which an appeal must be taken from the original decree.

*Id.* (citations, internal quotation marks, and brackets omitted).

We conclude that the October 26, 2007 first amended judgment is the judgment that triggered the time period under HRAP Rule 4 for filing a notice of appeal. The October 26, 2007 first amended judgment made a substantial and material change to the September 13, 2007 judgment in that the October 26, 2007 first amended judgment deleted the portion of paragraph 5 of the September 13, 2007 judgment that referred to Ching as one of the parties who was liable for the award of attorneys' fees and costs in favor of Altres, Inc. in the amount of $35,437.53. In other words, while the Circuit Court is not required to include an award of attorneys' fees and costs within a judgment, the Circuit Court in the instant case nevertheless chose to include a provision within the September 13, 2007 judgment that entered judgment in favor of Altres, Inc. and against, among others, Ching for attorneys' fees and costs in the amount of $35,437.53. The October 26, 2007 first amended judgment deleted this provision as to Ching, and, thus, eliminated Ching's monetary liability as set forth in the first judgment. Therefore, we

10

conclude that the October 26, 2007 first amended judgment made a substantial and material change to the September 13, 2007 judgment. In contrast, however, the November 23, 2007 second amended judgment did not make material and substantial changes to the October 26, 2007 first amended judgment. Therefore, the October 26, 2007 first amended judgment is the judgment that triggered the time period under HRAP Rule 4 for filing a notice of appeal.[6]

Ching's timely motion for attorneys' fees extended the time for filing a notice of appeal for all parties "until 30 days after entry of an order disposing of the motion[.]" Haw. R. App. P. 4(a)(3). When the Circuit Court entered the Order Denying Ching's Motion for Fees/Costs on November 23, 2007, each party had 30 days from that date in which to file a notice of appeal. The NST Parties filed a timely joint notice of appeal on December 21, 2007. Altres, Inc. filed a timely notice of cross-appeal on January 3, 2008. See Haw. R. App. P. 4.1(b)(1).

Therefore, the NST Parties' appeal and Altres, Inc.'s cross-appeal are properly before us for consideration.

B.  The Circuit Court misinterpreted the Workforce Agreement.

The NST Parties contend that the Circuit Court erred in concluding that NST breached the Workforce Agreement in failing to indemnify Altres, Inc. for its payments to settle with DiFalco. The NST Parties contend that NST does not owe Altres, Inc. a duty to indemnify under the Workforce Agreement because DiFalco was employed by AES at all times relevant in the DiFalco Case.

For purposes of identifying any duty to indemnify or defend owed by NST to Altres, Inc. arising from the DiFalco

---

[6]    The fact that the parties's notice of appeal and notice of cross-appeal mistakenly designate the November 23, 2007 second amended judgment rather than the October 26, 2007 first amended judgment does not invalidate the appeal and cross-appeal in this case. Our appellate courts have consistently held that, "a mistake in designating the judgment . . . should not result in [the] loss of the appeal as long as the intention to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake." State v. Graybeard, 93 Hawai'i 513, 516, 6 P.3d 385, 388 (App. 2000) (internal quotation marks omitted) (quoting City & Cnty. of Honolulu v. Midkiff, 57 Haw. 273, 275-76, 554 P.2d 233, 235 (1976)).

lawsuit, Paragraph 2.a. of the Workforce Agreement is crucial. It states: "*This Agreement covers the workforce employed by Altres*. Altres shall implement its human resources, risk management, and communications policies, and shall otherwise manage said employment relationship within CUSTOMER'S workplace." (Emphasis added). The Workforce Agreement governs Altres, Inc.'s relationship with NST vis-à-vis Altres, Inc.'s employees. We conclude that the indemnification provisions operate only when the alleged liability for which Altres, Inc. seeks indemnification is somehow connected to an Altres, Inc. employee.

The allegations of wrongdoing against Altres, Inc. in DiFalco's complaint start from a period beginning in December 2001. The questions, then, are whether DiFalco was Altres, Inc.'s employee during this relevant time period or whether there is any merit to Altres, Inc.'s contentions that DiFalco was co-employed by Altres, Inc. The Circuit Court did not make findings of fact on either of these points because it erroneously concluded that Section 4.c of the Workforce Agreement would allow Altres, Inc. to seek indemnification from NST irrespective of who was DiFalco's employer.

"When an appellate court discerns that a [trial court] has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings." *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982). This principle applies in this case where testimony was presented that, while DiFalco was certainly employed by AES, he was "co-employed by [Altres, Inc.] for the purposes of administrative employment." *See* BLACK'S LAW DICTIONARY 602 (9th ed. 2009) (an employee is "a person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance"); 27 Am. Jur. 2d *Employment Relationship* § 5 (2007) ("A dual employment relationship may exist if more than one individual or company has the right to control or direct an employee in the performance of the work or if an employee is under a contract of hire with two different employers.").

12

Therefore, the Circuit Court erred in concluding that NST was required to indemnify Altres, Inc. without a finding, based on the evidence, that DiFalco was an employee of Altres, Inc. when some or all of DiFalco's claims arose.  We remand for further findings of fact.[7/]

C.    Ching's Attorneys' Fees and Costs

Finally, we address the issue of Ching's attorneys' fees and costs.  Ching argues that although the Circuit Court correctly held that he was a prevailing party, the Circuit Court erred in denying him fees on the ground that he was entitled to mandatory indemnification under HRS §§ 414D-165 and 414D-161. Altres, Inc., on cross-appeal, contests the Circuit Court's conclusion that Ching is a prevailing party.[8/]  We address Altres, Inc.'s argument first.

1.    Ching is a prevailing party vis-à-vis Altres, Inc.

Pursuant to HRS § 607-14 (Supp. 2011), in all actions in the nature of assumpsit, "there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable" to be paid to the prevailing party. Altres, Inc. argues that Ching cannot be a prevailing party because, as a plaintiff in the underlying action, he lost his affirmative claims in the complaint.

"In multiple parties cases, a party may be a losing party *vis-a-vis* two other parties, and a party may be a loser as to one party and a winner as to another[.]" *Rosa v. Johnston*, 3 Haw. App. 420, 431, 651 P.2d 1228, 1236 (1982) (internal citations omitted).  The NST Parties' complaint in the Island Case and second amended complaint in the Nautilus Case, although naming Altres, Inc. as a defendant, sought damages from Island

_____

[7/]    Our holding renders the remaining points of error relating to indemnification purely academic, and we decline to address them.

[8/]    Altres, Inc. further contends that Ching's request for fees was untimely.  The "victory" to which NST refers in its opposition brief may have "existed" when the September 13, 2007 Final Judgment was entered, but it was not determinable until the Amended Judgment was filed on October 26, 2007.

and Nautilus under their respective insurance policies with Altres, Inc. and alleged no claims against Altres, Inc. Ching did not assert any claims against Altres, Inc., but prevailed on all of Altres, Inc.'s counterclaims against him. Consequently, the Circuit Court did not abuse its discretion in holding that Ching was the prevailing party vis-à-vis Altres, Inc.

>        2.    The Circuit Court's basis for denying Ching
>              attorneys' fees was erroneous.

Although holding that Ching was a prevailing party, the Circuit Court denied Ching recovery of any attorneys' fees and costs. Citing *Rosa v. Johnston*, 3 Haw. App. 420, 431, 651 P.2d 1228, 1237 (1982), the Circuit Court stated that "[a] court may properly deny an individual defendant's request for attorney's fees and costs, when the same attorney defends both an individual and corporate defendant, and the individual defendant has not show [sic] what part of attorneys' fees were actually incurred by him." The Circuit Court reasoned that Ching could not be liable for any attorneys' fees and costs because (1) the same attorneys represented NST and Ching and (2) pursuant to HRS §§ 414D-165(a)[9] and 414D-161,[10] NST, and not Ching, "would be liable for any attorneys' fees and costs attributable to CHING as an officer of NST" because NST would be required to indemnify Ching.[11]

-----

[9]    HRS § 414D-165(a) (2004) states:

An officer of the corporation who is not a director, unless limited by a corporation's articles of incorporation, is entitled to mandatory indemnification under section 414D-161, and is entitled to apply for court-ordered indemnification under section 414D-163 in each case, to the same extent as a director.

[10]    HRS § 414D-161 (2004) states:

Unless limited by its articles of incorporation, a corporation shall indemnify a director who was wholly successful, on the merits or otherwise, in the defense of any proceeding to which the director was a party because the director is or was a director of the corporation, against reasonable expenses actually incurred by the director in connection with the proceeding.

[11]    HRS §§ 414D-165 and 414D-161 are part of the Hawaii Nonprofit Corporations Act. Although NST appears to be a for-profit corporation, HRS §§ 414-243 and 414-247(c), found in the Hawai'i Business Corporation Act, provide equivalent protections.

14

We hold that the Circuit Court's statutory indemnification rationale for denying Ching any attorneys' fees and costs is incorrect. It does not follow that if one party merely has a right to indemnification from a third party, then he cannot recover attorneys' fees. When a party has a right to indemnification, the party suffers loss that may or may not be indemnified should the indemnitor have the financial capability and will to cover the loss. BLACK's LAW DICTIONARY 837 (9th ed. 2009) ("indemnification" is "[t]he action of compensating for loss or damage sustained"). To uphold the Circuit Court's conclusion in this case would, in another case, give little solace to an officer of a bankrupt or intransigent corporation, who has paid significant attorneys' fees and costs in litigation out-of-pocket but who, for any number of possible reasons, does not secure reimbursement from the company.[12]/

Here, Ching filed a declaration on November 14, 2007 that, pursuant to an agreement with his attorney, he has been "personally responsible for payment of 1/3 of the attorneys' fee and costs incurred defending against [Altres, Inc.]'s counterclaims." Thus, Ching requested $21,138.71 ($63,416.14 ÷ 3) and costs of $1,080.75 ($3,242.26 ÷ 3). The Circuit Court abused its discretion by denying Ching fees on the basis that he was entitled to indemnification from NST because Ching claims that he has paid or is contractually responsible for one-third of the attorneys' fees in defending the Altres, Inc. counterclaims. Whether Ching is otherwise entitled to attorneys' fees and costs and whether the amount claimed is reasonable are issues properly addressed on remand. See Rosa, 3 Haw. App. at 431, 651 P.2d at 1237.

Therefore, we vacate the Order Denying Ching's Motion for Fees/Costs and remand for consideration of the amount, if

---

12/ Furthermore, whether pursuant to contract, statute, or common law, indemnitors and indemnitees frequently have differences of opinion whether indemnification is legally required in a given situation. Litigation might be required to come to a determination on this point—this case is a prime example. See generally Sherman v. Am. Water Heater Co., Inc., 50 S.W.3d 455 (Tenn. Ct. App. 2001) (litigation over whether corporation required to indemnify former employee under mandatory-indemnification statute). Given that NST was not even asked to comment on this matter, the Circuit Court was not in a position to declare NST's legal obligation to indemnify Ching.

any, Ching is entitled to as a prevailing party under HRS § 607-14.

V.    Conclusion

The judgments and underlying orders in this appeal are vacated, and this case is remanded to the Circuit Court for proceedings not inconsistent with this opinion.

DATED:   Honolulu, Hawai'i, September 21, 2012.


On the briefs:

Roy F. Epstein and
Carlos D. Perez-Mesa
(Epstein & Perez-Mesa)
for Plaintiffs-Appellants/
Cross-Appellees
NST Holdings Corp. dba
Budget Hawaiian Holidays,
Danny Ching and Gene Miyake.

Stuart M. Cowan,
Mark T. Shklov, and
Michel A. Okazaki
for Defendant-Appellee/
Cross-Appellant
Altres, Inc.

Presiding Judge

Associate Judge

Associate Judge